CIACCIO, Judge.
Defendants, The City of New Orleans and policeman August Santosuosso, appeal from a judgment of the trial court which awarded $450,000 to Darryl Thompson and his parents for injuries received by this minor child when the motorbike upon which he was a passenger was struck by a police vehicle owned by the City and operated by patrolman August Santosuosso, while in *594 the employ of the City. We affirm the judgment of the trial court.
Following a jury trial, the plaintiff was awarded a lump sum judgment of $450,000, after the jury found the plaintiff passenger free from negligence and the defendants Wendell Youngblood and August Santos-uosso each 50% negligent in causing this accident. On appeal the defendants, City of New Orleans and August Santosuosso, contend that the trial court erred in its findings of negligence and in the amount of the award.
Defendants argue that the evidence adduced at trial does not support the jury’s assessment of liability in this case.
Our review of the record indicates a conflict in the testimony concerning the cause of the accident.
Plaintiff, Darryl Thompson, and the motorbike driver, Wendell Youngblood, testified that at approximately 4 p.m. on October 24, 1982 they were working on Young-blood’s car when the pair decided to go to McDonald’s to get something to eat. Youngblood borrowed his cousin’s Honda 360 motorbike after receiving permission from his cousin. The pair boarded the motorbike with Youngblood as the driver and Thompson as the passenger. At the time both occupants were wearing helmets. They drove down Galvez Street, took a right turn on Earhart and a right turn on Freret Street and then a left turn unto Erato Street. These parties testified that at the time they were proceeding between 30 and 35 miles per hour and they had observed all traffic signs along the route. The pair stopped at the intersection of Thalia and South Liberty Streets. They proceeded down Thalia Street towards Claiborne Avenue. When the bike had proceeded one fourth of the way down the block it was struck on the left rear side by a police car driven by defendant August Santosuosso. At this point, Thalia Street is a two way thoroughfare with traffic moving in opposite directions. The street is marked with a white divider line. At the time of the accident, according to Thompson and Youngblood, their bike was completely within their lane of traffic and for no apparent reason, Santosuosso’s vehicle, which had been travelling in the opposite direction on Thalia Street, veered sharply into their traffic lane. The Santosuosso vehicle struck the left rear of the motorbike striking the plaintiff’s left leg. The Santosuosso vehicle then struck a parked vehicle. As a result of the accident, the plaintiff was thrown into the air, landed on top of a parked car and sustained a broken pelvis and multiple fractures of the left leg. Following the impact, Youngblood claimed that the bike lost its braking system and he proceeded onward for four blocks until the bike stopped when it hit a neutral ground area.
Youngblood and Thompson each stated that they were not aware that they were being pursued by the police nor did they see the police car light or hear the siren during this incident. Their version of the facts surrounding this accident was partially corroborated by three eye-witnesses.
Stephanie Walker lives at 2310 Thalia Street. She stated that on the evening of this incident she was standing on the porch when she observed the plaintiff riding on the motorbike down Thalia Street. He was followed by a police car and a second police car was travelling up Thalia Street in the opposite direction from that of the motorbike. As this police car approached, it turned into the plaintiff’s traffic lane, hitting the side of the motorbike and then striking a parked car. She saw plaintiff thrown into the air and landing on top of another car. The bike and its driver proceeded down Thalia Street at a speed of between 30-35 miles per hour. The policeman who was involved in the accident exited his car and held a gun on the plaintiff. According to this witness, neither police car had on its lights or siren at the time of this incident.
Jane Jones, who also lives on Thalia Street, was sitting by her kitchen window when she witnessed the accident. She testified that she observed the police vehicle cut across the plaintiff’s lane of traffic and strike the plaintiff. She also saw plaintiff *595 thrown into the air and fall on top of a sports car. Thereafter the policeman exited his vehicle and he had a gun in his hand. According to this witness, the police vehicle appeared to be trying to block the plaintiffs path.
A third eye witness, James Walker, lives at 2310 Thalia Street. He testified that he was standing on the corner of Liberty and Thalia Streets and he observed the motorbike on Liberty Street as it turned onto Thalia Street. At this time the motorbike was travelling in the direction of Claiborne Avenue and the police vehicle was travel-ling towards Liberty Street. The police car pulled into the plaintiffs path, striking the plaintiff and then hitting a parked car. The plaintiff was flipped into the air and landed on a sports car. The motorbike and driver proceeded forward.
On the date of this accident, New Orleans Police Officer August Santosuosso was on a one man routine patrol. He testified that he had proceeded down Thalia Street in order to set up a roadblock at Thalia and South Liberty Streets. He first observed the motorbike when it was 50 feet away, travelling at a high rate of speed. Santosuosso further testified that as he proceeded along Thalia Street some children ran out into the street and he applied his brakes and veered to his left. Just at this time, the motorbike moved out from between parked cars, at which time Thompson stuck his leg out, hitting the patrolman’s car and throwing Thompson from the bike. The police car then slid into another car. Santosuosso stated that he did not try to knock the occupants off their motorbike nor did he intentionally pull into their lane of traffic, but was merely attempting to avoid striking the children in the street.
New Orleans Police Officers Charles Little and David Carter testified that on the day of this accident they were patrolling together near Erato Street. They were on Erato proceeding towards Galvez Street when they observed the Youngblood bike disregard a stop sign at Galvez and Earhart Streets. The patrolmen turned on their police lights and pursued the occupants of the motorbike. According to these witnesses, both passengers of the bike looked back and observed their police vehicle whereupon they increased their speed, disregarded certain street signals and fled. The patrolmen followed the occupants of the motorbike along several streets and when they reached Thalia Street they observed a police vehicle which had set up a roadblock on Thalia Street. According to Little and Carter, the bike was attempting to pass between an open space which existed between the parked police car and certain vehicles parked by the curb area. The bike swerved, thus causing Thompson to fall from the bike. The bike and driver proceeded on Thalia toward Claiborne. It thereafter went off the roadway, struck the neutral ground and the driver fell from the bike. According to these witnesses, the driver of the bike was given citations for fleeing the police and for several traffic violations.[1]
The jury, faced with a conflict in the testimony, chose to believe the plaintiff and those witnesses who corroborated his version of the facts surrounding the accident. The jury concluded that the defendants’ actions were the sole cause-in-fact of this accident.
The evaluation of witness’ testimony is a function of the trier of fact. The decision in this case rested upon such an evaluation of credibility. The record supports the jury’s finding on the issue of liability and thus the jury’s findings based upon their evaluation of the witness’ credibility is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978). For these reasons this assignment of error lacks merit.
The defendants also contend that the jury lump sum award of $450,000 is clearly excessive.
In assessing damages in cases of quasi-offense, much discretion is left to the *596 trial court judge. Perniciaro v. Brinch, 384 So.2d 392 (La., 1980). Before the appellate court will disturb such an award, the record must clearly reveal that the trier of fact abused his discretion in making the award, based upon the particular injuries and their effect upon the particular individual who sustained the injuries. Perniciaro v. Brinch, supra; Reck v. Stevens 373 So.2d 498 (La.,1979).
The record reveals that at the time of this accident Darryl Thompson was 12 years of age. As a result of this accident he was diagnosed as having sustained a fractured pelvis, and multiple fractures of the left leg, including fractures of the femur, tibia and fibula.
The child was initially treated at Charity Hospital. On the night of the accident he was taken to the operating room where the fractures were cleaned to prevent infection. He underwent several surgical procedures while at the hospital. Surgical pins were placed across the bone in the plaintiff’s lower leg in order to hold the bone in place. While the plaintiff was in recovery following this surgery, it was observed that his leg was swelling because it was not receiving enough blood. The plaintiff was returned to surgery to relieve the pressure in his leg. Thereafter skin grafts were performed which ultimately resulted in significant scaring to the legs. On November 4, 1982 a displaced bone in the plaintiffs leg was realligned with two surgical screws. Plaintiff was treated with a splint and placed in traction for an extended period of time before a cast was applied to his leg. The plaintiff remained in the hospital 59 days until his discharge on December 21, 1982. He remained in the cast for six months, during which time he walked with crutches. Approximately ten months after the accident plaintiff regained his ability to walk. Thompson was released from the Charity Hospital Clinic on March 22, 1983.
Thereafter, the plaintiff was treated by Dr. John Henry Agro Omabaka, an orthopedic surgeon. He was first seen on August 4,1983. Thompson was found to have left thora columbar schoiosis (i.e., a curvature of the spine to the left) and was observed to walk with a limp. The curvature of plaintiffs spine was measured to be 10 degrees to the right. According to Dr. Omabaka, the scoliosis was caused because of the difference in length between the plaintiffs left and right leg resulting from the injuries sustained in the accident. The reason the right leg was longer than the left was because the growth plate in the distal end of the femur had been destroyed, thus preventing the growth of the left leg. In 1983, there was a one inch discrepancy between the length of plaintiffs right and left leg. This discrepancy had increased to two inches by August, 1984. Dr. Omabaka posited that the discrepancy would increase for approximately one year, as this was the time he figured this plaintiff had remaining within which to grow. As a corrective measure for the plaintiffs physical problems, special shoes were prescribed.
Dr. Omabaka testified that plaintiff would have a greater chance than most to develop back problems, as the back was being “thrown out” to compensate for the difference in leg lengths. In addition to the two inch shortness in the left leg, the plaintiff was found to have a stiffness in his left knee which prevented normal movement. He was also found to have residuals from the skin grafts. Dr. Onabaka testified that the plaintiff sustained a 30% total partial impairment of the left lower extremity as a result of this accident. He stated that once the plaintiffs bones healed that the plates, which had been surgically implanted, could be removed and the doctor’s fee for this would be approximately $1,000. He stated that a followup every six months would be preferable but that the plaintiff should have at least an annual check-up for the rest of his life.
Plaintiff's father, De Morris Thompson, testified that his son Darryl had been a very active child before this accident. Darryl formerly played ball, swam and cut grass, however, he is now unable to engage in these activities. Mr. Thompson also testified that his son’s school grades had fallen since this accident. Mr. Thompson stat *597 ed that he had hospital and physician bills for his son as a result of this accident, totalling $17,978.19.
Plaintiff, Darryl Thompson, testified that since the accident he had scars on his legs from the skin grafts and he no longer wears shorts. His left leg and ankle no longer move as they once did and his left leg is shorter than the right. He has difficulty in bending his leg and his ankle is stiff. He has pain in his knee and it hurts him to walk. He also stated that for several months he had difficulty sleeping. The young Thompson also testified that he formerly played basketball and football but he could no longer do this. He had once thought he would like to become a basketball player when he grew up, but now this is impossible. He also stated that it hurt him to ride a bike. He no longer engages in extracurricular activities but rather spends his spare time watching television. He is limited in his activities, worries about his leg and is self conscious of the way he walks.
Considering the multiple fractures sustained by this young child causing him to be subjected to an extended hospital stay and several surgeries and resulting in scarring, scoliosis and a 30% disability of the leg and considering the effect these injuries have had and will have on the life of this child and upon his ability to earn a living in the future, we cannot say that the jury’s lump sum award of $450,000, although admittedly in the upper range, was an abuse of discretion and thus clearly wrong.
For the reasons assigned the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.

. According to Youngblood these charges were later dismissed.